STATE OF NORTH CAROLINA v. CHARLES ARRINGTON

No. 832SC87

(Filed 7 February 1984)

**Searches and Seizures § 26— suppression of evidence proper—affidavits support-
ing warrant deficient**

The trial court properly entered an order suppressing the evidence seized
in a search conducted pursuant to a search warrant where the affidavit was
deficient. The affidavit contained information from two informants. The first
informant asserted that defendant had marijuana for sale in his mobile home;
that defendant was growing marijuana in his home; and that the first inform-
ant purchased marijuana from the defendant. The affidavit failed to answer
the question "When?" as it related to staleness; the affidavit contained no in-
formation that the first informant spoke with personal knowledge as to the
allegations that the defendant had or was growing marijuana in his home; and
the affidavit did not suggest where the first informant purchased marijuana
from defendant. The assertions of the second informant were similarly defi-
cient in that, although the second informant asserted that within the last 24
hours and also for the past two months there had been a steady flow of people
to the defendant's home who were known by the second informant to use
drugs, it was not evident if the informant spoke with personal knowledge.

Judge BRASWELL dissenting.

APPEAL by the State from *Bruce, Judge.* Order entered 14
October 1982 in Superior Court, BEAUFORT County. Heard in the
Court of Appeals 30 September 1983.

*Attorney General Edmisten, by Associate Attorney General
Newton G. Pritchett, Jr., for the appellant State.*

*Stephen A. Graves for defendant appellee.*

BECTON, Judge.

The defendant, Charles Arrington, was indicted for unlawful-
ly, willfully and feloniously possessing more than one ounce of
marijuana in violation of N.C. Gen. Stat. § 90-95(a)(3) (1981). Pur-
suant to defendant's motion to suppress, filed prior to trial, the
trial court entered an order suppressing the evidence seized in a
search conducted pursuant to a search warrant, specifically find-
ing, among other things, that: "A fair reading of the affidavit in
question shows no circumstances from which it could be deter-
mined that the information known to Officer Boyd came to him

from the personal knowledge of a reliable confidential source." From the order suppressing the evidence, the State appeals.

By affidavit included in the application for the search warrant, Officer William Boyd swore to the following facts to establish probable cause for the issuance of a search warrant:

> I received from a confidential source within the last forty-eight hours that Charles Arrington had in his possession at his mobile home marijuana for sale. Confidential source advised that they had purchased marijuana from Charles Arrington. Source also advised that Arrington was growing marijuana in his home. A second confidential source advised that within the last 24 hours that there had been a steady flow of traffic to the Arrington home and also a steady flow of traffic for the past 2 months. The traffic is known to source as people that use drugs. The first source and second source has proven to be reliable in the past in that the first source has given information on numerous occasions in the past that has led to arrests. The second source has proven to be reliable in that I have known this source for many years and that they have furnished information not only to me but to other law enforcement officers that has proven to be reliable and arrests have been made.

In its brief, filed in March 1983, the State argued that the affidavit in support of the search warrant was sufficient, even considering the United States Supreme Court's opinion in *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509 (1964) and *Spinelli v. United States*, 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584 (1969). In a Memorandum of Additional Authority, filed 27 July 1983, the State, relying on the 8 June 1983 Supreme Court decision in *Illinois v. Gates*, --- U.S. ---, 76 L.Ed. 2d 527, 103 S.Ct. 2317, argues that the search warrant is clearly sufficient given the totality of the circumstances analysis required by *Gates*.

The United States Supreme Court's decision in *Gates* to "abandon the 'two-pronged test' established by [its] decisions in *Aguilar* and *Spinelli*"[1] in favor of a "totality of the circumstances

---

1. To establish probable cause based on hearsay information under the "two-pronged test," the affidavit must include the "underlying circumstances" showing

analysis" in determining probable cause does not transform an otherwise deficient affidavit into a sufficient one. *Gates*, --- U.S. at ---, 76 L.Ed. 2d at 548, 103 S.Ct. at ---. Consider this language from *Gates*:

> A deficiency in one [prong of the *Aguilar-Spinelli* test] *may* be compensated for, in determining the overall reliability of a tip, by a *strong* showing as to the other, *or* by some other indicia of reliability. [Citations omitted.]

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely *should not serve as an absolute bar* to a finding of probable cause based on his tip.

--- U.S. at ---, 76 L.Ed. 2d at 545, 103 S.Ct. at 2329 (emphasis added). If, for example, the affiant's information is stale or is not based on first-hand knowledge and there is no strong showing that the informant is unusually reliable or some other indicia of reliability, *Gates* does not mandate the issuance of a search warrant.

*Gates* does not require a magistrate to discount "veracity" and "basis of knowledge" in the probable cause equation. The magistrate's "practical, common-sense" determination of probable cause must include a consideration of both "veracity" and "basis of knowledge"; otherwise, the determination becomes impractical and nonsensical. Consistent with this notion, the *Gates* majority specifically noted "that an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." --- U.S. at ---, 76 L.Ed. 2d at 543, 103 S.Ct. at 2327. Simply put, *Gates* does not decimate all relevant Fourth Amendment case law which preceded it. Or, as the Supreme Judicial Court of Massachusetts recently said:

> It is not clear that the *Gates* opinion has announced a significant change in the appropriate Fourth Amendment treatment of applications for search warrants. Looking at what the Court did on the facts before it, and rejecting an ex-

---

that (1) the informant spoke with personal knowledge, and (2) the informant was credible.

pansive view of certain general statements not essential to the decision, we conclude that the *Gates* opinion deals principally with what corroboration of an informant's tip, not adequate by itself, will be sufficient to meet probable cause standards.

*Commonwealth v. Upton,* 390 Mass. 562, 568, --- N.E. 2d ---, --- (12 December 1983).

The evil the *Gates* Court sought to guard against was the greatly diminished value of anonymous tips in police work, considering "the strictures that inevitably accompany the 'two-pronged test'." --- U.S. at ---, 76 L.Ed. 2d at 547, 103 S.Ct. at 2331. The *Gates* Court unequivocally stated its concern:

> [A]s the Illinois Supreme Court observed in this case, the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. As a result, anonymous tips seldom could survive a rigorous application of either of the *Spinelli* prongs. Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.' While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.

*Id.* at ---, 76 L.Ed. 2d at 548, 103 S.Ct. at 2331-32.

So, while clearly opting for a totality of the circumstances analysis in determining probable cause, the *Gates* Court bottoms its holding on the value of corroborating details which support an informant's tip. Time after time the *Gates* majority stresses the significance of corroboration.

Our decision in *Draper v. United States,* 358 U.S. 307, 3 L.Ed. 2d 327, 79 S.Ct. 329 (1959), however, is the classic case on the value of corroboration efforts of police officials.

. . . .

The showing of probable cause in the present case was fully as compelling as that in *Draper.* Even standing alone, the facts obtained through the independent investigation of

Mader and the DEA at least suggested that the Gates were involved in drug trafficking.

In addition, the magistrate could rely on the anonymous letter, which had been corroborated in major part by Mader's efforts — just as had occurred in *Draper*. . . . It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' [Citations omitted.]

Finally, the anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The letter writer's accurate information as to the travel plans of each of the Gates was of a character likely obtained only from the Gates themselves, or from someone familiar with their not entirely ordinary travel plans. . . . It is enough that there was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gates or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability. It is apparent, therefore, that the judge issuing the warrant had a 'substantial basis for . . . conclud[ing]' that probable cause to search the Gates' home and car existed.

*Id.* at ---, 76 L.Ed. 2d at 551-53, 103 S.Ct. at 2334-36.

In this case, the affidavit contains the first informant's assertions that the defendant had marijuana for sale in his mobile home; that the defendant was growing marijuana in his home; and that the first informant purchased marijuana from the defendant. The affidavit fails to answer the question "when?" as it relates to staleness; the affidavit contains no information that the first informant spoke with personal knowledge as to the allegations that the defendant had or was growing marijuana in his home; and the affidavit does not suggest where the first informant purchased marijuana from defendant. In short, the affidavit contains no underlying circumstances from which the magistrate could reasonably conclude that there was probable cause to believe that marijuana was then present where the first informant declared it was.

The assertions of the second informant are similarly deficient. Although the second informant asserts that within the last 24 hours and also for the past two months, there had been a steady flow of people to the defendant's home, who were known by the second informant to use drugs, we do not know if the informant spoke with personal knowledge. Further, this portion of the affidavit does not detail any of the underlying circumstances from which the magistrate could conclude that marijuana was located at defendant's house.

In this case, we find no circumstances to compensate for the deficient factors "in determining the overall reliability of [the] tip." *Id.* at - - -, 76 L.Ed. 2d at 545, 103 S.Ct. at 2329. None of the corroborating factors or other indicia of reliability found in *Gates* are present in this case.

Under *Aguilar* and *Spinelli,* the affidavit in this case is unquestionably deficient. *Gates* does not resurrect it. The affidavit in this case is similar to the "bare bones" affidavit in *Aguilar* and *Nathanson v. United States*, 290 U.S. 41, 78 L.Ed. 2d 159, 54 S.Ct. 11 (1933). *Gates*, while strong medicine in the noble fight to discourage excessively technical dissections of informants' tips, is not a panacea. When, considering the totality of the circumstances, stale, unverified, and uncorroborated allegations give the magistrate no basis for determining the existence of probable cause, we must suppress the search warrant.

The judgment of the trial court is

Affirmed.

Judge JOHNSON concurs.

Judge BRASWELL dissents.

Judge BRASWELL dissenting.

It is not necessary to determine in this case if the affidavit complies with the "two-pronged test" derived from *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964), and adopted in North Carolina in *State v. Campbell*, 282

N.C. 125, 191 S.E. 2d 752 (1972). The United States Supreme Court in the recently decided case of *Illinois v. Gates,* --- U.S. ---, 103 S.Ct. 2317, 76 L.Ed. 2d 527, *rehearing denied,* --- U.S. ---, 104 S.Ct. 33, 77 L.Ed. 2d 1453 (1983), has set forth a different standard for determining probable cause for issuance of a search warrant based on information from informants. In *Gates,* the Supreme Court abandoned the two-pronged test established in *Aguilar* and *Spinelli* and in its place reaffirmed "the totality of the circumstances analysis that traditionally has informed probable cause determinations." *Id.* at ---, 103 S.Ct. at 2332, 76 L.Ed. 2d at 548.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* Finding that the two-pronged test "has encouraged an excessively technical dissection of informants' tips," and has "direct[ed] analysis into two largely independent channels—the informants' 'veracity' or 'reliability' and his 'basis of knowledge,'" the Supreme Court specifically said:

> There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Id.* at ---, 103 S.Ct. at 2329-30, 76 L.Ed. 2d at 545.

Turning now to the facts of this case, and using the *Gates* analysis, I find the first informant's statement that he had purchased marijuana from the defendant to be highly relevant to the magistrate's common sense determination of probable cause.

Likewise, the second informant's statements that people known to him to be drug users frequented defendant's house within the last 24 hours prior to the issuance of the search warrant, clearly corroborates the first informant's statements and compensates for any deficiency with regard to staleness in determining the overall reliability of the tip.

Significantly, no one questions the reliability of either of the informants. As said in *Gates,* "If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Id.* at - - -, 103 S.Ct. at 2329, 76 L.Ed. 2d at 545.

Considering the totality of the circumstances analysis adopted in *Gates,* I would hold that the trial court erred in suppressing the evidence seized in a search conducted pursuant to the search warrant.