471 A.2d 1064

Timothy RAMIA

v.

STATE of Maryland.

No. 596, Sept. Term, 1983.

Court of Special Appeals of Maryland.

March 1, 1984.

Certiorari Denied June 25, 1984.

Joseph Murphy, Jr., Towson, with whom was James V. Anthenelli, Salisbury, on brief, for appellant.

Deborah K. Chasanow, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland and Richard D. Warren, State's Atty., for Wicomico County, on brief, for appellee.

Argued before MOYLAN, WILNER and WEANT, JJ.

MOYLAN, Judge.

The appellant, Timothy Ramia, was convicted in the Circuit Court for Wicomico County, by Judge Alfred T. Truitt, Jr., sitting without a jury, of various violations of the Controlled Dangerous Substances Law. He was sentenced to six years incarceration and a fine of $15,000. The appellant does not challenge the propriety of his trial upon the merits.

In a commendable narrowing of the focus for the purpose of appellate review, he pinpoints the critical issue and does not clutter the appeal with interminable trivia. The single challenge is to the pretrial ruling made by Judge Richard M. Pollitt in denying the appellant's motion to suppress the physical evidence. Even thus concentrated, however, the challenge does not manage to gather any momentum. Judge Pollitt's ruling can be affirmed so many ways that the only difficulty is in deciding which to choose.

■ The first issue to be addressed, of course, is that of what standard of review should be employed by us to scrutinize the ruling of Judge Pollitt. The definitive word on that subject is found in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Reviewing courts (at the suppression hearing level or at the appellate level) do not undertake *de novo* review of the magistrate's probable cause determination but pay, rather, "great deference" to that determination. —— U.S. at ——, 103 S.Ct. at 2330–2331, 76 L.Ed.2d at 546–547. "Traditional deference to the probable cause determinations of magistrates" restricts the reviewing court to the limited question of inquiring as to whether "the magistrate had a 'substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing." *Id.* at

———, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. "The Fourth Amendment requires no more." *Ibid.*

In an imaginative effort to avoid the foreclosing effect of that deference, the appellant argues that *Illinois v. Gates, supra,* should not be given retroactive effect. He contrasts the date of June 8, 1983, on which *Illinois v. Gates* was decided, with the date of September 25, 1982, when the search warrant in this case was issued. He argues that a new standard of review should not be applied to a judicial determination made nine months before the new standard was promulgated. Among many other possible frailties, however, the syllogism proceeds from a false premise. It presupposes that *Illinois v. Gates* promulgated a new standard of review. *Illinois v. Gates* itself, however, left no doubt that it was simply declaring and reaffirming a preexisting and traditional standard of review.

Another and more significant part of *Illinois v. Gates,* not here pertinent, did, to be sure, break new ground. In setting forth the guidelines to be employed primarily by warrant-issuing magistrates in assessing information coming from confidential informants on the subject of probable cause, the Supreme Court, to some yet undetermined greater or lesser extent, abandoned (or modified) the highly structured approach of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). It countenanced a return to a looser "totality of circumstances" approach, eschewing the rigidly compartmentalized analysis of first *Aguilar*'s "veracity prong" and then *Aguilar*'s "basis of knowledge prong," with no doctrinal osmosis between the two. Although, to be sure, not addressing the retroactivity issue as such, this Court on two occasions has applied the new "totality of circumstances" approach of *Illinois v. Gates* in reviewing warrants issued prior to June 8, 1983. *Brown v. State,* 57 Md.App. 186, 469 A.2d 865 (1984); *Gipe v. State,* 55 Md.App. 604, 608–613, 466 A.2d 40 (1983).

The decision as to the appropriate set of guidelines—the loose approach of *Gates* versus the highly structured approach of *Aguilar-Spinelli*—is one that is addressed primarily to the warrant-issuing magistrates who will apply those guidelines in the first instance. *Illinois v. Gates* in this regard candidly broke with the past. A timely raised issue as to the retrospective application of *Illinois v. Gates* would be an intriguing one. Ironically, it is the State that on this occasion would be arguing for retrospective application and the defendant who would be championing a narrow prospectivity.[1] An interesting dimension would be added to that analysis by the prevailing philosophy as to the exclusive purpose, and intended beneficiaries, of the exclusionary rule of evidence. Since the purpose of the exclusionary rule is only prophylactic or deterrent and not remedial, the defendant would not appear to have had any entitlement or right even under the now-displaced constitutional standard, but would have been merely the unintended beneficiary who had

---

1. The chances of such an issue ever squarely arising, however, would seem to be remote. Only in an instance where the State had suffered suppression prior to June 8, 1983, under traditional *Aguilar-Spinelli* analysis, but was now enjoying (perhaps by way of limited State appeal) a review after June 8, 1983, whereunder the looser *Illinois v. Gates* approach might produce a different result, would the issue appear to be cleanly joined.

   The other apparent appellate posture for the raising of the issue would probably turn out, upon closer analysis, to be illusory. This would be the instance where the State had enjoyed victory at the suppression hearing, under an admittedly erroneous application of *Aguilar* and *Spinelli* in the State's favor, but was now arguing upon post-June 8, 1983 review that the ultimately right thing, under the new learning of *Illinois v. Gates,* had been done but for the wrong reason. A more direct avenue to affirmance, however, would be by way of resort to the great deference which the suppression hearing judge should have rendered unto the warrant-issuing magistrate's initial determination of probable cause.

   The rare cases of egregious mistake aside, the more deferential standard of review would largely moot any subtle distinctions between those close cases that barely fail under rigid *Aguilar-Spinelli* analysis and those that would just manage to scrape through under the looser *Illinois v. Gates* approach. Any significant range of discretion would be broad enough to embrace both as legitimate predicates for reasonable probable cause determinations.

served as the vehicle for the prophylactic purpose of general deterrence. The defendant would hardly be able to claim a vested interest in an evidentiary exclusion that, even originally, had never been intended for his direct benefit, but had come to him only by way of an unintended but unavoidable procedural bonus. All of this, however, is not the issue before us.

Our concern in this case is not with the question of which set of constitutional guidelines—*Aguilar-Spinelli* or *Gates* —should be used by the warrant-issuing magistrate in evaluating information from a confidential informant. Our concern is rather with the question of what standard of review we, as an appellate court,[2] should apply in scrutinizing, after the fact, the decision made by that warrant-issuing magistrate. This is an absolutely discrete issue and one that could arise regardless of whether the warrant-issuing magistrate had used *Aguilar-Spinelli* guidelines, *Gates* guidelines, or any other set of guidelines.

This is a recurring question which goes to the very heart of the reviewing function. It is also a question that has strangely suffered from massive neglect. Frequently arising out of a welter of ambiguous circumstances, the ultimate issue of probable cause or the threshold issue of the admissibility, credibility, and weight of information coming from a confidential informant are both issues that do not yield computerized "white or black" answers. They occupy gray areas where reasonable minds might reasonably differ. A close question of probable cause (or the admissibility of information from an informant bearing on probable cause) might be submitted to twenty fair and knowledgeable judges with ten finding one way and ten finding the opposite way and none of them being unreasonable or clearly erroneous. What happens when such a ruling comes to us,

---

**2.** The same standard, of course, would also apply to a *nisi prius* judge presiding at a suppression hearing. He also would be scrutinizing, after the fact, an earlier determination made by a warrant-issuing magistrate.

or to a suppression hearing judge, for review? Do we simply monitor the system for "error" (which is the basic, though limited, appellate function)? Do we extend due deference to any reasonable conclusion arising out of the gray area or broad discretionary range as something not "clearly erroneous" or a "clear abuse of discretion," even where we ourselves might have concluded otherwise from the same ambiguous predicate? Or do we make a *de novo* determination on these issues? This broad range for legitimate and error-free differences would prevail and this question of the appropriate standard of review would, therefore, arise, regardless of whether an *Aguilar-Spinelli* standard or a *Gates* standard were being applied to the literal subissue of the admissibility of hearsay information from a confidential informant.

In what we perceived to be the absence of any clear and unmistakable direction from the Supreme Court, we in Maryland had (erroneously, it turns out) applied an essentially *de novo* standard of review to such probable cause determinations in the warrant context. Proceeding largely by analogy to the appellate review of a finding of obscenity and the appellate review of a finding of voluntariness of a confession, *Gardner v. State,* 10 Md.App. 233, 245, 269 A.2d 186 (1970); *Mulligan v. State,* 10 Md.App. 429, 431 n. 1, 271 A.2d 385 (1970); *Dillingham v. State,* 9 Md.App. 669, 714, 267 A.2d 777, 801 (1970) (concurring opinion by Orth, J.); *Barnhart v. State,* 5 Md.App. 222, 224, 246 A.2d 280 (1968); *Walker v. State,* 12 Md.App. 684, 691–696, 280 A.2d 260 (1971), we treated the finding of probable cause by a warrant-issuing magistrate as a mixed question of law and fact. We distinguished between first-level facts (where bottom-line persuasion and the resolution of conflicting credibilities are involved) and second-level facts—the significance to be drawn from the first-level facts once they are found. We called these second-level facts "constitutional facts" or "conclusory facts." We rendered *de novo* judgment at the secondary or conclusory level. We denominated that standard of review, "independent, reflective, constitutional judg-

ment." *Walker v. State, supra,* at 12 Md.App. 695, 280 A.2d 260.

We were wrong. *Illinois v. Gates* leaves no room for doubt that reviewing courts, at the appellate level or at the suppression hearing level, have no business second-guessing the probable cause determinations of warrant-issuing magistrates by way of *de novo* determinations of their own. Unless the finding of the magistrate in this regard is "clearly erroneous" or represents "a clear abuse of discretion," it is unassailable. *Illinois v. Gates* makes it equally beyond dispute that this is not a change in the law, but a declaration of preexisting law. *Illinois v. Gates* makes explicit what was already, at the very least, implicit.

The very language of Justice Rehnquist in setting out the appropriate standard of review also reveals unequivocally the lineage of that standard. The cases cited as precedent for the standard of review are *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). The Supreme Court, at 76 L.Ed.2d 546–547, simply reiterated and reaffirmed:

"Similarly, *we have repeatedly said* that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli, supra,* 393 U.S., at 419, 89 S.Ct. 584 [at 590], 21 L.Ed.2d 637. 'A grudging or negative attitude by reviewing courts toward warrants,' *Ventresca, supra,* 380 U.S., at 108, 85 S.Ct. 741 [at 745], 13 L.Ed.2d 684, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant 'courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' *Id.,* at 109, 85 S.Ct. 741 [at 746], 13 L.Ed.2d 684." (Emphasis supplied).

Shortly thereafter in the *Illinois v. Gates* opinion, the Supreme Court stressed the long continuity of the review standard it was there reiterating:

> "Reflecting this preference for the warrant process, *the traditional standard for review of an issuing magistrate's probable cause determination has been* that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). See *United States v. Harris,* 403 U.S. 573, 577–583, 91 S.Ct. 2075, 2079–2082, 29 L.Ed.2d 723 (1971). We think *reaffirmation of this standard* better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with *our traditional deference to the probable cause determinations of magistrates* than is the 'two-pronged test.' " —— U.S. at ——, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. (Emphasis supplied).

██ Language such as "we have repeatedly said," "the traditional standard for review . . . has been," "reaffirmation of this standard," and "our traditional deference," hardly bespeaks a break with the past. Applying, therefore, this venerable and immutable standard of review to the case at hand, we have thoroughly scrutinized the lengthy and detailed application for a search warrant in this case and have no difficulty in holding that the "magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Under the circumstances, Judge Pollitt correctly denied the motion to suppress.[3]

---

**3.** For whatever solace it may be to the appellant, as he loses his argument as to the appropriate standard for appellate review, we observe gratuitously that the practical result would have been the same even had the appellant prevailed as to the standard of appellate review. Even if we had, on *de novo* review, applied rigorous *Aguilar-Spinelli* standards, the confidential informant in this case passed the "two-pronged test" with flying colors. A significant "track record" of past successes recited in great detail and unflecked by a single failure, established solid veracity. That veracity, moreover, was massively buttressed, verified, authenticated, and corroborated by

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY
APPELLANT.

painstaking and meticulous "independent police verification." Intimate acquaintanceship with the criminal enterprise in question and explicitly cited firsthand observations established indisputably a sound "basis of knowledge."

The admissibility of the information from the confidential informant, however, is but a threshold consideration. The ultimate determination is whether all of the information, including that from the confidential informant, establishes probable cause. Even if we were exercising in this regard an independent, reflective, constitutional judgment of our own, we would have no difficulty in concluding that there was no mere probability but well-nigh mathematical certainty that the defendant here was a major trafficker in illicit drugs and that his isolated farmhouse, the object of the search warrant, was a major repository of contraband narcotics.