479 A.2d 1335

**William J. POTTS**

v.

**STATE of Maryland.**

**No. 4, Sept. Term, 1984.**

Court of Appeals of Maryland.

Aug. 22, 1984.

---

Thomas J. Saunders, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for Appellant.

Deborah K. Chasanow, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for Appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

This case involves a search of appellant Potts' residence under a search warrant issued prior to the Supreme Court's June 8, 1983 decision in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Appellant's trial motion to suppress incriminating evidence found in his house asserted a lack of probable cause to support issuance of the search warrant under the Supreme Court's pre-*Gates* decisions of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Circuit Court for Baltimore City (Hammerman, J.) determined that the probable cause test enunciated in *Gates* was applicable to the pre-*Gates* warrant, and that under the standard established by that case, the search warrant was validly issued. The court went on to conclude that were *Aguilar* and *Spinelli* controlling, the motion to suppress would have been granted since under those cases the search warrant application failed to demonstrate probable cause for the warrant's issuance. Potts was subsequently found guilty of six narcotic related offenses and appealed. We granted certiorari prior to decision by the intermediate appellate court primarily to determine the applicability of *Gates* to a pre-*Gates* search warrant, both under the Fourth Amendment to the Federal Constitution and Article 26 of the Maryland Declaration of Rights.

I.

In *Gates*, the Court applied "a totality of the circumstances" analysis in determining whether an affidavit based on an anonymous informant's tip provided probable cause under the Fourth Amendment for the issuance of a search warrant. In doing so, the Court expressly abandoned the

strict two-prong test derived from *Aguilar* and *Spinelli* which required that the magistrate be informed of (1) some of the underlying circumstances from which the informant concluded that the incriminating evidence was located where it was claimed to be, and (2) some of the underlying circumstances from which the affiant concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable." *Aguilar, supra,* 378 U.S. at 114, 84 S.Ct. at 1514. The Court noted in *Gates* that the two prongs of the test have been considered independent of each other by courts which have applied it, *see, e.g., Stanley v. State,* 19 Md.App. 507, 530–31, 313 A.2d 847 (1974), and that, consequently, failure to satisfy one prong of the test could not be overcome by a strong showing on the other. *Gates, supra,* 462 U.S. at —— n.6, 103 S.Ct. at 2328 n.6. In expressly rejecting the rigid application of the *Aguilar-Spinelli* test, the Court reaffirmed the totality of the circumstances analysis that "traditionally has informed probable cause determinations." *Gates, supra,* 462 U.S. at ——, 103 S.Ct. at 2332. It said:

> "[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 2331.

*See United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971); *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). The Court indicated that the veracity and basis of knowledge of the informant are still relevant to a probable cause determination. It said:

> "[T]hey are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or

by some other indicia of reliability." *Gates, supra,* 462 U.S. at ——, 103 S.Ct. at 2329.

The Court continued:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 2332.

After-the-fact judicial scrutiny of the affidavit should not take the form of *de novo* review; the Court said: "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli, supra,* 393 U.S., at 419 [89 S.Ct. at 590]." *Id.* at 2331. The Court added that a grudging attitude toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Id.* But mere conclusory statements made in a "bare bones" affidavit are not enough, the Court cautioned. It said:

> "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* at 2332.

In *Massachusetts v. Upton,* —— U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), the Court clarified its holding in *Gates.*[1] In that case, the Supreme Judicial Court of Massachusetts had earlier held that *Gates* did not significantly change the *Aguilar-Spinelli* test but only indicated that

---

1. The Court's clarification was issued in response to a number of cases which viewed the holding in *Gates* as merely adding a new wrinkle to the two-prong *Aguilar-Spinelli* test. *See State v. Ruffin,* 448 So.2d 1274 (La.1984); *Commonwealth v. Upton,* 390 Mass. 562, 458 N.E.2d 717 (1983); *State v. Arrington,* 66 N.C.App. 215, 311 S.E.2d 33 (1984); *State v. Ricci,* R.I., 472 A.2d 291 (1984).

corroboration of an informant's tip may satisfy the probable cause requirement, even though the two-prong test was not otherwise met. The Supreme Court responded:

"We think that the Supreme Judicial Court of Massachusetts misunderstood our decision in *Gates*. We did not merely refine or qualify the 'two-pronged test.' We rejected it as hypertechnical and divorced from 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)." *Id.* —— U.S. at ——, 104 S.Ct. at 2087.

The Massachusetts court erred, said the Court, by not examining each piece of information in the affidavit and balancing the various indicia of reliability concerning the tip. Instead, the Court explained, the Massachusetts court

"insisted on judging bits and pieces of information in isolation against the artificial standards provided by the two-pronged test." *Id.* 104 S.Ct. at 2088.

Additionally, the state court failed to defer to the decision of the magistrate who issued the warrant. The Court said:

"Instead of merely deciding whether the evidence viewed as a whole provided a 'substantial basis' for the magistrate's finding of probable cause, the court conducted a *de novo* probable cause determination. We rejected just such after-the-fact, *de novo* scrutiny in *Gates*." *Id.*

The Court noted that

"[a] deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.*

In finding the existence of probable cause in that case, the Court stated:

"[T]he magistrate can hardly be accused of approving a mere 'hunch' or a bare recital of legal conclusions. The informant's story and the surrounding facts possessed an internal coherence that gave weight to the whole." *Id.* at 2089.

## II.

The affidavit in support of the search warrant application in this case recited the observations of a Baltimore City Police Officer and the information which he received from an unnamed informant. The affiant asserted that Potts' home, located at 222 South Gilmor Street in Baltimore City, was being used by Potts for the keeping and distribution of controlled dangerous substances and related paraphernalia. The affiant said that during the last week of December 1982 an informant told him that Potts was selling heroin from his residence, which he used as "a stash house," and from his automobiles; that the informant further stated that Potts transported the heroin from his residence to the 800 block of Carroll Street, where he sold it; and that Potts sold his last bag of heroin on December 31, 1982 and was due to resupply himself the first of the following week. The affiant stated that the informant also advised him that he had purchased a $35 bag of heroin from Potts during the last week of December 1982 while in the 800 block of Carroll Street; and that Potts supplied the bag of heroin from the trunk of his Buick Skylark automobile. The affiant asserted that he knew his informant to be a heroin addict; that the informant had proven reliable in the past by furnishing narcotic related information which led to the conviction of more than ten persons.

The affiant specified that he had Potts under periodic surveillance since July of 1982; and that during November and December of 1982 he had followed Potts as Potts drove his Buick Skylark from his residence to the 800 block of Carroll Street, which was a popular gathering place for narcotic addicts, and then back to his residence. The affiant stated that he had previously received information from the informant that Potts and James Stencil were partners in the narcotic business; that as a result of that information, an investigation was conducted which led to the recovery of twenty-four bags of heroin and the arrest of Stencil; and that while there was insufficient evidence to charge Potts

on that particular occasion, Stencil and Potts were often observed by the affiant in each other's company.

The affiant also stated that, according to his informant, Donna Burris lived with Potts at his residence; that she possessed a blue Toyota bearing Maryland registration GGH–271; and that Potts used this vehicle "to occasionally resupply himself with Heroin." Finally, the affiant recited that he had observed Potts using the blue Toyota to travel between his residence and the 800 block of Carroll Street; and that this vehicle was in fact registered to Donna Burris at Potts' residence address.

■■■ Under the totality of the circumstances analysis explicated by *Gates* and *Upton,* and giving the magistrate's determination the great deference mandated by those cases, we hold that there was a substantial basis upon which the magistrate could have found that a search of Potts' residence would uncover illegal narcotics; hence, the issuance of the warrant did not violate the Fourth Amendment. In so concluding, we have considered Potts' contention that the affidavit failed to demonstrate the basis for the informant's assertion that narcotics would be found in Potts' house. Under the *Gates* test, however, 462 U.S. at ——, 103 S.Ct. at 2334, the police are not required to corroborate every piece of information supplied by the informant. Where, as here, the affidavit taken as a whole creates a fair inference that a particular unsubstantiated assertion is probably correct, probable cause may be found to exist. As the Court said in *Gates,* 462 U.S. at ——, 103 S.Ct. at 2335, citing with approval *Spinelli, supra,* 393 U.S. at 427, 89 S.Ct. at 594 (White, J. concurring): "Because the informant is right about some things, he is more probably right about other facts." Of course, probable cause does not demand the certainty associated with formal trials; it is sufficient that a "fair probability" existed that Potts' residence contained illegal narcotics. *Gates,* 462 U.S. at ——, 103 S.Ct. at 2336.

■■■ Potts next urges that in interpreting and applying Article 26 of the Maryland Declaration of Rights, we reject

the *Gates* analysis and retain the *Aguilar-Spinelli* two-prong test for determining probable cause for the issuance of a search warrant. Article 26 provides:

"That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

Article 26 and the Fourth Amendment to the Federal Constitution developed from the same historical background. *Gahan v. State*, 290 Md. 310, 321, 430 A.2d 49 (1981); *Givner v. State*, 210 Md. 484, 492, 124 A.2d 764 (1956). Accordingly, we have said on numerous occasions that Article 26 is *in pari materia* with its federal counterpart and decisions of the Supreme Court interpreting the Fourth Amendment are entitled to great respect. *Little v. State*, 300 Md. 485, —— n. 3, 479 A.2d 903 (1984); *Gahan, supra*, 290 Md. at 321–22, 430 A.2d 49; *Liichow v. State*, 288 Md. 502, 509 n. 1, 419 A.2d 1041 (1980); *Merrick v. State*, 283 Md. 1, 4 n. 2, 389 A.2d 328 (1978); *Givner, supra*, 210 Md. at 492, 124 A.2d 764; *Johnson v. State*, 193 Md. 136, 144, 66 A.2d 504 (1949); *Bass v. State*, 182 Md. 496, 500, 35 A.2d 155 (1943); *Blum v. State*, 94 Md. 375, 382, 51 A. 26 (1902). Giving due regard to the reasoning in *Gates* and *Upton*, we decline to adopt a probable cause standard under Art. 26 which is different than that applied under the Fourth Amendment. Accordingly, the appropriate standard for reviewing a magistrate's probable cause determination under Art. 26 is the totality of the circumstances analysis as set forth in *Gates* and *Upton*. *See Brown v. State*, 57 Md.App. 186, 469 A.2d 865 (1984).

## III.

Potts next argues that *Gates* should not be applied retroactively to searches conducted prior to the decision in that

case. This is so, he maintains, because a retroactive application of *Gates* would violate the purpose of the exclusionary rule, which is deterrence of illegal police conduct. To retroactively apply *Gates*, in Potts' view, would improperly validate police conduct which was unlawful when it occurred.

The cases hold that the Constitution neither prohibits nor requires that retrospective effect be given to any new constitutional rule. *United States v. Johnson*, 457 U.S. 537, 542, 102 S.Ct. 2579, 2583, 73 L.Ed.2d 202 (1982); *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965); *McClain v. State*, 288 Md. 456, 462, 419 A.2d 369 (1980); *Wiggins v. State*, 275 Md. 689, 698, 344 A.2d 80 (1975). In *United States v. Johnson, supra*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202, the Court set forth guidelines for determining when new legal rules established in cases decided under the Fourth Amendment should be applied retroactively. The Court said that, as a general rule, a new constitutional decision applies to all cases pending on direct appeal. *Id.*, 457 U.S. at 562, 102 S.Ct. at 2594. The Court also identified three areas where its prior decisions determined whether a new rule should be applied retroactively or prospectively. First, where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively. *Id.* at 549, 102 S.Ct. at 2587. Likewise, full retrospective effect is given to a ruling that a trial court lacked authority to convict or punish a criminal defendant. *Id.* at 550, 102 S.Ct. at 2587. But where a new rule of criminal procedure constitutes "a clear break with the past," retrospective application is inappropriate. *Id.* at 549, 102 S.Ct. at 2587.

In *Wiggins v. State, supra*, 275 Md. 689, 344 A.2d 80, we noted that retroactive application was necessary: (1) where the purpose of the new constitutional doctrine was to change an aspect of the criminal trial which substantially impaired its truth finding function; (2) where no trial was constitutionally permissible; and (3) where the punishment imposed was not constitutionally permissible. 275 Md. at

701–02, 344 A.2d 80. In the absence of one of these circumstances, we said that retrospective application of a new constitutional rule depends on a balancing of three factors: (1) the purpose of the new rule; (2) reliance by the authorities on the old standard; and (3) the effect on the administration of justice of retrospective application. *Id.* at 700, 344 A.2d 80. *See also Stovall v. Denno,* 388 U.S. 293, 296–97, 87 S.Ct. 1967, 1969–70, 18 L.Ed.2d 1199 (1967); *Linkletter, supra,* 381 U.S. at 636, 85 S.Ct. at 1743; *State v. Hicks,* 285 Md. 310, 336–37, 403 A.2d 356 (1979).

In *McClain v. State, supra,* 288 Md. 456, 419 A.2d 369, the appellant sought to prevent the use against him of statements which he claimed were obtained in violation of former Maryland District Rule 709 a. Subsequent to his conviction, we decided in *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), that the police conduct complained of by McClain was unlawful. The issue before us was whether McClain, on appeal of his conviction, could claim the benefit of · *Johnson,* even though that case was decided after McClain was convicted. We said: "We regard the point before us as not being so much the issue of retroactivity as it is the question of what law is applicable on direct appellate review of a conviction." *McClain, supra,* 288 Md. at 464, 419 A.2d 369. After reviewing the relevant principles, we held that because McClain raised the issue later decided in *Johnson,* the rule of that case applied in McClain's case which was on direct appellate review at the time *Johnson* was decided. *Id.* 228 Md. at 470, 419 A.2d 369.

The courts of other jurisdictions have held uniformly that the rule of *Gates* applies to all cases pending on direct review when *Gates* was decided. In *United States v. Mendoza,* 727 F.2d 448 (5th Cir.1984), the court examined the issue of the retrospective application of *Gates* under the standards announced in *United States v. Johnson, supra,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202. The court held that *Gates* did not announce an entirely new and unanticipated principle of law. *Mendoza, supra,* 727 F.2d

at 449. It observed that *Gates* did not overrule any clear past precedent upon which litigants relied because

> "persons engaged in unlawful activity, like [defendants] Mendoza and Tabares, could hardly have been depending on *Aguilar* and *Spinelli* to shield their illegal conduct. Furthermore, *Gates* created no entirely new principle of law because it did not 'disapprove an established practice that the court had previously sanctioned.' [quoting *Johnson, supra,* 457 U.S. at 551, 102 S.Ct. at 2588]." *Id.* 228 Md. at 449–50, 419 A.2d 369.

*United States v. Estrada,* 733 F.2d 683 (9th Cir.1984) reached the same conclusion. The court there said:

> " 'As a rule, judicial decisions apply "retroactively." ' *Solem v. Stumes,* —— U.S. ——, ——, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). Any exceptions to this general principle must find their source in the 'interest of justice' or 'the exigencies of the situation.' *Id.*" *Id.* at 685.

The court stated that generally decisions limiting the exclusionary rule are fully retroactive. It held, *quoting United States v. Johns,* 707 F.2d 1093, 1097 (9th Cir.1983):

> " 'No other result makes sense. The purpose of refusing to apply retroactively a new decision enforcing the exclusionary rule is to avoid penalizing police conduct when the police reasonably relied on existing judicial precedent. [Citations omitted.] When a court determines that a particular police practice does *not* violate the Constitution, there is no reason not to apply that decision retroactively.' "

Moreover, the court said: "A participant in illegal activities cannot legitimately expect to order his affairs in reliance on prior judicial interpretations of the exclusionary rule." *Estrada, supra,* 733 F.2d at 685. Similarly, the court observed, the administration of justice is benefited by giving retrospective application to a new decision limiting the exclusionary rule. *Id.*

In *State v. Espinosa-Gamez*, 139 Ariz. 415, 678 P.2d 1379 (1984), the court noted that the *Gates* rule made admissible evidence which previously had been inadmissible under the exclusionary rule. Citing *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the court said that "the defendant does not have a vested right upon which he can rely in the application of the prior rule." *Id.* 678 P.2d at 1383. The court concluded that *Gates* did not constitute a sharp break with the past and could fairly be applied retroactively. *Id.* 678 P.2d at 1384. To the same effect, *see also United States v. Little*, 735 F.2d 1049 (1984); *Jefferson v. United States*, 476 A.2d 685 (D.C.1984); *People v. Seats*, 121 Ill.App.3d 637, 77 Ill.Dec. 251, 460 N.E.2d 110 (1984); *Ramia v. State*, 57 Md.App. 654, 661, 471 A.2d 1064 (1984); *Commonwealth v. Price*, Pa.Super., 464 A.2d 1320 (1983).

Also instructive are the cases discussing the retrospective application of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In *Ross*, the Court determined: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.*, 456 U.S. at 825, 102 S.Ct. at 2172. In so concluding, the Court overruled *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) and modified its holding in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Like *Gates*, *Ross* limited the exclusionary rule and, also like *Gates*, it has been applied retroactively to all cases pending on direct appellate review. In *United States v. Burns*, 684 F.2d 1066 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983), the court explained that in Fourth Amendment cases applying the exclusionary rule, retroactive application depends on whether the rule's policies of protecting judicial integrity and deterring police misconduct would be served. The court stated that prospective application generally is given to decisions involving good faith searches by police officers

that later became plainly unconstitutional under intervening Supreme Court decisions. The court said:

"Under such circumstances, retroactivity would neither deter police misconduct nor promote judicial integrity because the officers have reasonably relied on existing judicial precedent. [Citation omitted.] Here, refusal to uphold searches later found constitutional would not serve the purposes underlying the exclusionary rule either. Because the Supreme Court has declared searches such as those involved here to be constitutional, no police misconduct has in fact occurred. Hence, there is no misbehavior to be deterred, and the interest in maintaining judicial integrity is not implicated . . . ." *Id.* at 1074.

The court concluded that *Ross* need not be given purely prospective application. *See also United States v. Freire,* 710 F.2d 1515 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984); *United States v. Johns,* 707 F.2d 1093 (9th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 3532, 82 L.Ed.2d 838 (1984); *United States v. Martin,* 690 F.2d 416 (4th Cir.1982); *State v. Espinosa-Gamez,* 139 Ariz. 415, 678 P.2d 1379 (1984); *People v. Ruggles,* 138 Cal.App.3d 950, 188 Cal.Rptr. 401 (1983); *People v. Morales,* 109 Ill.App.3d 183, 64 Ill.Dec. 750, 440 N.E.2d 302 (1982); *People v. Langen,* 60 N.Y.2d 170, 456 N.E.2d 1167, 469 N.Y.S.2d 44 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1287, 79 L.Ed.2d 690 (1984); *State v. Bouchles,* 457 A.2d 798 (Me.1983).

■ As a general rule, a change in law will be given effect while a case is on direct review. *Solem v. Stumes,* —— U.S. ——, ——, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984); *United States v. Johnson, supra,* 457 U.S. at 562, 102 S.Ct. at 2594; *McClain v. State, supra,* 288 Md. at 464, 419 A.2d 369. We find no reason to depart from the general rule. Plainly, *Illinois v. Gates* does not involve a clear break with the past in the sense contemplated by the rule supporting prospective application of an entirely new principle of law under the formulation of *United States v. Johnson, supra.* *Gates* did not create an entirely new legal

standard; instead it "reaffirm[ed] the totality of the circum-
stances analysis that traditionally has informed probable
cause determinations." *Gates, supra,* 462 U.S. at ——, 103
S.Ct. at 2332. The Court said:

> "This totality of the circumstances approach is far
> more consistent with our prior treatment of probable
> cause than is any rigid demand that specific 'tests' be
> satisfied by every informant's tip." *Id.* 462 U.S. at ——,
> 103 S.Ct. at 2328.

*See also Ramia v. State,* 57 Md.App. 654, 661, 471 A.2d
1064 (1984). Furthermore, application of the *Gates* stan-
dard is thoroughly consistent with the purpose thereby to
be served. As the Court noted in *Upton, supra,* —— U.S. at
——, 104 S.Ct. at 2088, the totality of the circumstances
analysis is more compatible with the practical, common-
sense decision demanded of the magistrate. *Gates* empha-
sized the need to abandon the hypertechnical standard of
judicial review that developed from the strict application of
the *Aguilar-Spinelli* factors. At most, *Gates* represents a
recommitment to past principles of probable cause analysis,
rather than an abrupt shift to an entirely new standard.

Certainly, Potts had no reason to rely on the prior
application of *Aguilar-Spinelli;* manifestly, he did not
structure his illegal behavior in reliance upon the exclusion-
ary rule's application under those cases. Indeed, the exclu-
sionary rule is a prophylactic device designed to deter police
misconduct. It does not confer a right upon an individual to
the exclusion of evidence at a criminal trial as a matter of
constitutional law. Otherwise stated, the exclusionary rule
is not a personal constitutional right; its purpose is not to
redress the injury to the privacy of persons subjected to a
search or seizure because any such reparation would come
too late. *See Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct.
3037, 3048, 49 L.Ed.2d 1067 (1976) and cases there cited.
Under our holding in this case, Potts' constitutional rights
were not violated and thus there is no illegal police conduct
to be deterred. Consequently, we see no reason not to

apply the principles of *Gates* to the pre-*Gates* search warrant involved in this direct review of Potts' convictions.

## IV.

█ Potts contends that the trial court erred when it refused to merge his conviction of simple possession of marihuana into his conviction for possessing marihuana with intent to distribute. According to Potts, this constitutes multiple punishment for the same offense in violation of the Fifth Amendment's prohibition against double jeopardy.

The record indicates that all the evidence against Potts was obtained during the search of his residence. It is clear, however, that the two convictions were based on the seizure of two completely separate quantities of marihuana. The intent to distribute conviction was based on the seizure of a plastic shopping bag containing forty bags of marihuana, while the simple possession charge was based on seizure of an apparently personal supply of marihuana in a cigar box containing three plastic bags of the substance. Under these circumstances, we cannot conclude that the trial judge erred in refusing to merge the two convictions. *See Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977).

JUDGMENTS AFFIRMED, WITH COSTS.