671 A.2d 51

**Dwight Cornelius WARRICK**

**v.**

**STATE of Maryland.**

**No. 366, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Feb. 5, 1996.

Gina M. Serra, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Annabelle L. Lisic, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Scott G. Patterson, State's Attorney for Talbot County, Easton, on the brief), for appellee.

Submitted before WILNER, C.J., HARRELL, J., and PAUL E. ALPERT, Judge (Retired), Specially Assigned.

HARRELL, Judge.

Appellant, Dwight Cornelius Warrick, pled guilty in the Circuit Court for Talbot County to distributing cocaine and possessing cocaine with the intent to distribute. Pursuant to a plea agreement, the court sentenced appellant on 20 June 1990 to two concurrent ten-year terms of imprisonment. The sentences were imposed without the possibility of parole pursuant to the "subsequent offender" provision of Article 27, Section 286(c) (1957, 1992 Repl.Vol.). Appellant filed a petition for post conviction relief in 1995, which the circuit court denied after a hearing. We granted appellant's application for leave to appeal. Appellant's sole question on appeal is whether the "without parole" provisions of his 1990 sentences are legal. To answer this question, we must determine whether the holding of *Gargliano v. State*, 334 Md. 428, 639 A.2d 675 (1994) should be applied retrospectively.

## FACTS

Appellant committed three drug-related crimes in early 1990. He was arrested and charged with two counts of distributing cocaine on 19 January 1990 and one count of possessing cocaine with the intent to distribute on 1 February 1990. A jury convicted appellant on 16 May 1990 of one of the charges of distributing cocaine. He pled guilty to the other two charges pursuant to a plea agreement entered into on 20 June 1990. On the same day, the court accepted the plea agreement. The sentencing guidelines in effect at that time, had they been followed, reflected that appellant could have received a maximum sentence of twenty years of imprisonment and a maximum fine of $25,000.00 for each of the two convictions. Instead, pursuant to the plea agreement, appellant accepted two concurrent ten-year terms of imprisonment without the possibility of parole.

The court imposed the "without parole" portion of appellant's sentences under Article 27, Section 286(c). That section provides, in pertinent part:

a person who is convicted [for distribution of CDS] ... shall be sentenced to imprisonment for not less than 10 years if the person *previously has been convicted:* [of distribution of CDS.] (Emphasis added).

At the time appellant entered his guilty plea, it was generally believed that the phrase "previously has been convicted" required only that the person had been convicted sometime before sentencing on the second conviction. The prior or underlying conviction used to support appellant's "without parole" 20 June 1990 sentences was his 16 May 1990 conviction.

Three years after appellant pled guilty, we issued an opinion in which a petitioner challenged the general interpretation of the phrase "previously has been convicted." *See Gargliano v. State,* 95 Md.App. 593, 622 A.2d 767 (1993). Gargliano argued before this Court that the phrase "previously has been convicted" required that a conviction on the prior offense precede the *commission and* conviction of the subsequent offense. *Gargliano,* 95 Md.App. 593, 600, 622 A.2d 767. We disagreed and held that neither the plain language nor the legislative history of the statute required such an interpretation. Under our ruling, to subject an accused to the enhanced penalty under section 286(c), all that was required was a prior conviction—whether the crime for which the enhanced sentence was imposed was committed before or after the prior conviction was irrelevant.

One year later, the Court of Appeals reversed us. *See Gargliano v. State,* 334 Md. 428, 639 A.2d 675 (1994). The Court of Appeals found the phrase "previously has been convicted" ambiguous. Applying general principles of statutory construction and looking to the legislative history of similar statutes, the Court believed, and subsequently held, that the "mandatory sentence prescribed by section 286(c) may be imposed only where the conviction for the prior offense precedes the *commission* of the principal offense." *Gargliano,* 334 Md. at 431, 639 A.2d 675 (emphasis in original). The Court of Appeals held further that "the enhanced penalty [i.e., without parole provision] mandated by 286(c) may be imposed

only where the principal offense is committed after the defendant has been convicted of an earlier offense." *Gargliano*, 334 Md. at 449, 639 A.2d 675.

■ Appellant argues in the instant appeal, as he did before the circuit court, that the "without parole" provisions of his sentences are illegal. Appellant cites *Gargliano v. State*, 334 Md. 428, 639 A.2d 675 (1994), decided four years after appellant's sentence was imposed. Appellant argues, and the State concedes, that if appellant's plea agreement had been entered into after *Gargliano* was decided, the circuit court could not have imposed his sentences without parole—the offenses for which appellant received the enhanced sentences were committed prior to his conviction for the underlying offense. Moreover, it is well-settled that a judge may not impose a sentence that is not allowed by law, even if the defendant agrees to the sentence as part of a plea bargain. *State v. Fincham*, 71 Md.App. 314, 525 A.2d 265 (1987); *Rojas v. State*, 52 Md.App. 440, 450 A.2d 490 (1982). The question before us is whether *Gargliano* should be retroactively applied to the instant case. We conclude that *Gargliano* should be applied prospectively only. We explain.

## ANALYSIS

Different legal principles apply when determining the possible retroactivity of a new law depending on whether the new law is a statute or case law. We want to make clear that although we are dealing with a statute, we are not construing what the Maryland General Assembly said but what the Court of Appeals said the General Assembly said. Thus, we are deciding whether case law (the holding of the Court of Appeals in *Gargliano*) should be given retroactive effect.[1]

---

1. The question of retroactivity in case law is most frequently found in the context of new constitutional rules. Here, however, no constitutional question is implicated. Nonetheless, the principles set forth here apply equally in the context of new constitutional rules as they do in the present context. *See State v. Hicks*, 285 Md. 310, 338, 403 A.2d 356 (1979) ("[w]hile *Stovall, Linkletter* [*v. Walker*, 381 U.S. 618, 85 S.Ct.

The general rule of retroactivity *vel non* can be stated simply—if the subject case merely applies settled precedents to new facts, the case is given retroactive effect, for the case is viewed as not changing the law in any material way. *Yates v. Aiken*, 484 U.S. 211, 216–17, 108 S.Ct. 534, 537–38, 98 L.Ed.2d 546 (1988). On the other hand, if the subject case creates a new rule that is a "clear break" with the past, retrospective application is inappropriate. *Griffith v. Kentucky*, 479 U.S. 314, 324, 107 S.Ct. 708, 714, 93 L.Ed.2d 649 (1987). The Supreme Court has said that a "clear break" exists where the new rule "explicitly overruled a past precedent of this Court, or disapproved a practice this Court had arguably sanctioned in prior cases, or overruled a longstanding practice that lower courts had uniformly approved." *Griffith*, 479 U.S. at 325, 107 S.Ct. at 714.

Reaching a conclusion as to which of these general rules seems to apply does not end our inquiry. Two additional analyses must be made. Regardless of whether one concludes that the new holding or rule constitutes a "clear break," we must consider additionally whether any of three special circumstances requiring retroactivity applies. The Court of Appeals in *Wiggins v. State*, 275 Md. 689, 701, 344 A.2d 80 (1975), surmised from Supreme Court cases three circumstances in which retrospective application is mandated:

(1) where the old rule affected the integrity of the fact-finding process, (2) where no trial was constitutionally permissible, and (3) where the punishment is not constitutionally permissible.

The analysis of these circumstances is of greatest import in testing whether an initial conclusion that the new rule or holding is a "clear break" should be trumped by the existence of one of the circumstances. On the other hand, if this analysis results in a determination that the circumstances are

---

1731, 14 L.Ed.2d 601 (1965)], and *Wiggins* involved new constitutional rulings, the principles there announced apply as well to new interpretations of statutory provisions or rules.").

not implicated, it offers reinforcement for the prospective application conclusion reached under the general rule inquiry.

Even if, after the foregoing inquiries, one concludes that a retrospective application of the new rule or holding seems indicated, we must forge on to a further analysis consisting of a balancing test. In *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), the Supreme Court held that the balancing of the following three factors was necessary to determine the effect on the judicial system of applying a new rule retroactively:

> (1) the purpose of the new rule, (2) reliance by the authorities on the old standard; and (3) the effect on the administration of justice of retrospective application.

*Stovall,* 388 U.S. at 297, 87 S.Ct. at 1970. *See also Potts v. State,* 300 Md. 567, 578, 479 A.2d 1335 (1984). The Supreme Court has stated that, once a court has found that the new rule was unanticipated, the second and third *Stovall* factors—reliance by law enforcement authorities on the old standards and effect on the administration of justice of a retroactive application of the new rule—have virtually compelled a finding of non-retroactivity. *Griffith v. Kentucky,* 479 U.S. at 324–25, 107 S.Ct. at 713–14.

Considering the threshold analysis in this process, we do not believe that the Court of Appeals' holding in *Gargliano* was a "clear break" with the past. To the contrary, the decision of the Court of Appeals in *Gargliano* was founded upon ordinary principles of statutory construction. Looking to the words of the statute first, the Court found section 286(c) unclear as to "whether the statute was intended to apply only to defendants who fail to reform their behavior after a prior conviction or whether it was intended to apply to all defendants who amass multiple convictions." *Gargliano,* 334 Md. at 438, 639 A.2d 675. The Court then turned to the general rules of statutory construction to evince the legislative intent, including the general rule that highly penal statutes should be strictly construed in favor of lenity. *Gargliano,* 334 Md. at 437, 639 A.2d 675.

Finding nothing in the legislative history of section 286 helpful in discerning the legislative intent, the Court then looked to similarly worded statutes explaining that "we have repeatedly stated that the general purpose of such [enhanced penalty] statutes is to deter the future commission of criminal offenses by persons who have previously been convicted and subject to the threat of punishment." *Gargliano*, 334 Md. at 442–43, 639 A.2d 675 (citations omitted). The *Gargliano* Court quoted with approval language from its decision in *Montone v. State*, 308 Md. 599, 613, 521 A.2d 720 (1987), in which the Court interpreted section 643B(b), a similarly worded statute:

> The picture that emerges is a statute specifically designed to identify and target a unique class of people so that they may be permanently exiled from our free society. These are the violent criminals who have been exposed to the correctional system three distinct times, who have refused to conform their conduct to societal standards, and who, instead, have demonstrated violent criminal behavior after each encounter with the correctional system, thus evidencing the futility of any hope for their rehabilitation.

The Court also looked at similarly worded statutes in other jurisdictions and found that, in most jurisdictions with enhanced penalty statutes, "the prior conviction must *precede* the commission of the principal offense." *Gargliano*, 334 Md. at 445–46, 639 A.2d 675 (emphasis in original).

Absent a clear statement of legislative intent to the contrary, the Court of Appeals in *Gargliano* stated, "[w]e adhere to our previous determinations of legislative intent with regard to similar statutes ... [and] therefore hold that [section] 286(c) is applicable only if the defendant has been convicted of an earlier offense prior to the commission of the principal offense." *Gargliano*, 334 Md. at 445, 639 A.2d 675 (footnote omitted). Moreover, the *Gargliano* Court believed that this interpretation was most consistent "with the general requirement that criminal statutes be sufficiently clear and definite to inform a person of ordinary intelligence what conduct is punishable and what the penalty for such conduct might be

before *the criminal conduct is committed."* Gargliano, *334 Md. at 445 fn. 16, 639 A.2d 675 (emphasis in original). Thus, the decision of the Court of Appeals in* Gargliano *was not a "clear break" with the past but merely the application of general well-accepted principles to a new law.*

Were our inquiry to end here, we would hold that the Court of Appeals's decision in *Gargliano* should be applied retroactively. As we stated above, however, we must next determine whether any of the three circumstances set forth in *Wiggins, supra,* apply in this case. They do not. The Court of Appeals holding in *Gargliano* did not affect the trial process, only sentencing. Therefore, the holding did not affect the integrity of the fact-finding process. Nor did the *Gargliano* holding affect whether a trial was constitutionally permissible. Although the *Gargliano* holding did affect the permissibility of imposing a certain type of punishment, the basis for the punishment was a statute, not a constitutional principle. Thus, the third circumstance is also not implicated.

In the last leg of our analytical journey, we must balance the three factors set forth in *Stovall, supra.* Balancing the *Stovall* factors, we conclude that the holding in *Gargliano* should be applied prospectively only and not retrospectively. The new rule announced in *Gargliano* was clearly unanticipated. This is evidenced by the fact that, since the adoption of section 286 by the Maryland General Assembly in 1988, the section was interpreted and applied consistently with the decision of the Court of Special Appeals in *Gargliano.* Thus, there can be no question that the bar, the courts, and law enforcement officials relied on that previous interpretation. In addition, to "correct" all sentences imposed prior to the decision of the Court of Appeals decision in *Gargliano* would impose an onerous burden. The number of cases that would have to be vacated would have a substantial effect on the administration of justice. Although it is possible that a State's Attorney might agree simply to a re-sentencing pursuant to the judicially-modified plea agreement (eliminating the "without parole" limitation), the attractiveness of that option seems dependent on many considerations, such as the variance be-

tween the sentence under the modified plea agreement and the available sentences under whatever sentencing guidelines and statutes might govern a sentencing after trial and conviction, changes in prosecutorial decision-makers and their policies, and the logistical difficulties of going to trial at the later date. In most cases, we perceive, new plea agreements would have to be negotiated . or, alternatively, the State would be forced to go to trial in cases in which in all probability witnesses' memories have dimmed and evidence would be hard, if not impossible, to secure. Thus, we hold that the decision of the Court of Appeals in *Gargliano* is to be applied prospectively only. Accordingly, we will not disturb appellant's sentence on appeal.[2]

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**2.** Appellant argues that if we find appellant's sentences illegal, we should vacate only the "without parole provision" of his sentences. Because we hold that appellant's sentences are legal, we do not reach this question.