REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 2232

September Term, 2011


MIGUEZ A. GUARDADO

v.

STATE OF MARYLAND


Krauser, C.J.,
Zarnoch,
Kehoe,

JJ.


Opinion by Kehoe, J.


Filed: August 27, 2014

Miguez A. Guardado[1] appeals from a judgment of the Circuit Court for Anne Arundel County denying his petition for a writ of error *coram nobis*. He presents three issues which we have reworded slightly:

1.  Whether the circuit court erred in holding that claims of ineffective assistance of counsel based on *Strickland v. Washington*, 466 U.S. 668 (1984), were not cognizable claims in *coram nobis* proceedings?

2.  Whether the circuit court failed to apply the correct prejudice standard to the appellant's *Strickland* ineffective assistance of counsel claim?

3.  Whether the circuit court erred in holding that the trial court's collateral consequences advisements pursuant to Maryland Rule 4-242(e) could "cure" what would otherwise be ineffective assistance of counsel at a guilty plea proceeding?

We are satisfied that the circuit court reached the correct result. Therefore, we will affirm its judgment, although our reasoning differs from that of the court. *See Offutt v. Montgomery County Bd. of Educ.*, 285 Md. 557, 564 n.4 (1979) ("[A]n appellate court may affirm a trial court's decision on any ground adequately shown by the record.").

## Background

On May 7, 2008, in the Circuit Court for Anne Arundel County, Guardado pled guilty to conspiracy to commit theft over $500. Guardado was represented by counsel during the guilty plea proceeding. The court accepted his plea and sentenced Guardado to imprisonment for one year with all but two days suspended, subject to one year of supervised probation and Guardado's payment of restitution to the victim.

While receiving Guardado's plea, in relevant part, the circuit court advised Guardado

---

[1]In his brief, Mr. Guardado asserts that his first name is Miguel.

as follows:

The Court: I am not asking about your citizenship, but I am telling you [that] if you are not a United States citizen[,] this case may affect your status in this country. This case may lead to other consequences such as deportation. If you have concerns in that area you should speak to your attorney before entering this guilty plea. Do you understand that?

[Guardado]: Yes.

After the court's advisement, Guardado did not request an opportunity to confer with his counsel before entering the guilty plea. Guardado neither filed a motion to withdraw the plea pursuant to Maryland Rule 4-242(f)[2] nor filed an application for leave to appeal pursuant to Md. Code Ann. (2006) § 12-302(e) of the Courts and Judicial Proceedings Article and Maryland Rule 8-204.

Thereafter, the United States Department of Homeland Security ("DHS") initiated removal proceedings against Guardado, asserting that he was subject to removal pursuant

_____

[2]Maryland Rule 4-242(f) provides:

At any time before sentencing, the court may permit a defendant to withdraw a plea of guilty . . . when the withdrawal serves the interest of justice. After the imposition of sentence, on motion of a defendant filed within ten days, the court may set aside the judgment and permit the defendant to withdraw a plea of guilty . . . if the defendant establishes that the provisions of section (c) or (e) of this Rule were not complied with or there was a violation of a plea agreement entered into pursuant to Rule 4-243. The court shall hold a hearing on any timely motion to withdraw a plea of guilty . . . .

2

to 8 U.S.C. § 1182(a)(6)(i).[3] On May 5, 2011, Guardado was detained by United States Immigration and Customs Enforcement ("ICE") as a result of his guilty plea.[4]

On July 13, 2011, Guardado, represented by different counsel, filed a petition for a writ of error *coram nobis* pursuant to Maryland Rule 15-1202. He asserted that his conspiracy conviction caused him to be detained by ICE and barred him from filing a petition for asylum. Additionally, he claimed that his guilty plea was entered in violation of the Sixth Amendment of the United States Constitution because his then-attorney had failed to advise him about the immigration consequences of the plea. Guardado asserted that, had he known of these consequences, he would not have pled guilty to the charge. He asked the circuit court to vacate his conviction for these reasons.

On November 2, 2011, the circuit court held a hearing on the petition for writ of *coram nobis*. There were no live witnesses. The evidence presented to the court consisted of: (1) a transcript of the guilty plea proceeding; (2) a stipulation that, had he been called to

---

[3]The statute provides that an "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

[4]Guardado's conviction of conspiracy to commit theft over $500 constituted a conviction of an "aggravated felony" under the Immigration and Nationality Act, *see* 8 U.S.C. § 1101(a)(43)(G) and (U) (providing, in concert, that a conspiracy to commit "a theft offense . . . for which [there is] a term of imprisonment [of] at least one year" constitutes an "aggravated felony"). Persons convicted of aggravated felonies are subject to detention by ICE. *See* 8 U.S.C. § 1226(c)(1)(B) (providing that "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A) . . . (iii) [pertaining to aggravated felonies]").

3

testify, Guardado's guilty plea lawyer would have testified that, although he "generally told

his non-citizen criminal clients that they could be deported if they accepted a criminal plea,"

he did not "specifically remember talking to [Guardado] about the immigration

consequences of the plea"; and (3) an affidavit signed by Guardado. The affidavit stated in

pertinent part:

> [My] attorney told me to plead guilty, because he said there was no way I
> could go free. I was not told by my attorney about the consequences of my
> guilty plea.
>
> At the hearing I was not told by either the prosecutor or the judge about
> the immigration consequences of a guilty plea. I therefore followed my
> attorney's advice and pled guilty to the charges. I was given one year
> probation and spent a weekend in jail. Had I been told, given the fact that I
> was innocent and I had done nothing wrong; I would definitely not have pled
> guilty.

The circuit court denied the petition. In a written opinion, the court expressed some

doubt as to whether a claim for ineffective assistance of counsel was cognizable in the

context of a petition for writ of error *coram nobis*.[5] Resolving that issue in Guardado's favor

for purposes of analysis, the court found that he had demonstrated ineffective assistance by

his guilty-plea counsel, but that he suffered no prejudice as a result. Specifically, the court

stated:

> Although Guardado was harmed by the unfortunate outcome of his guilty
> plea, it cannot be stated that he was "prejudiced" by a failure to advise him of
> the collateral consequences of his guilty plea. In fact, as was explained to him

---

[5]The question was resolved in *Miller v. State*, 435 Md. 174, 198 (2013), which
indicates that assertions of ineffective assistance of counsel, at least in the context of
guilty pleas, are cognizable in a claim for writ of error *coram nobis*.

[by the circuit court], his guilty plea had the very consequence he was warned about. He stated he understood that and wanted to accept the offered plea.

Under Maryland Rule 4-242(e) the court, alone, is permitted to advise Guardado of the possible consequences of the plea. The trial judge did so. The advice given to Guardado comports with the requirements of the rule. Guardado was advised and chose to gamble with the collateral consequences of the guilty plea. He cannot now claim to have been uninformed, making his agreement to plead guilty involuntary and unknowing. Words spoken by the court have meaning and legal significance. They are not idle chatter to be easily disregarded by criminal defendants.

## Analysis

Although a multitude of contentions are presented by the parties, we conclude that this case turns on the retroactive applicability of the holding of *Padilla v. Kentucky*, 559 U.S. 356 (2010)*,* to guilty pleas—such as Guardado's—made prior to March 31, 2010 (the date of the *Padilla* decision).[6] The State contends that Guardado did not bring a cognizable claim for ineffective assistance of counsel pursuant to *Padilla* in the context of his petition for writ of error *coram nobis*. We agree. Our conclusion is based upon Judge Battaglia's

[6]Among the other contentions is the State's argument that Guardado waived his right to file a *coram nobis* petition by failing to file an application for leave to appeal from his 2008 guilty plea. *Compare Holmes v. State*, 401 Md. 429, 445–46 (2007) (The failure to file an application for leave to appeal creates a presumption of waiver that can be rebutted by a showing of "special circumstances" excusing the failure to file an application for leave to appeal.) *with Miller v. State*, 435 Md. 174, 188 (2013) (A defendant's failure to anticipate the *Padilla* decision is not a "special circumstance" for the purposes of *Holmes.*). Apparently in reaction to the *Holmes* decision, the General Assembly enacted § 8-401of the Criminal Procedure Article, effective October 1, 2012. Section 8-401 provides that "[t]he failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." The statute was not before the Court in *Miller.* In *Graves v. State,* 215 Md. App. 339, 352 (2013), *cert. granted,* 437 Md. 637 (2014), this Court concluded that CP § 8-401 operates retroactively. The Court of Appeals has granted certiorari on this issue.

plurality opinion in *Miller v. State*, 435 Md. 174 (2013).

Nearly two years after Guardado pled guilty, the United States Supreme Court decided *Padilla,* in which the Court held that counsel's failure to accurately advise a defendant of the possible immigration law consequences of a guilty plea violated the defendant's right to effective assistance of counsel guaranteed by the Sixth Amendment. 559 U.S. at 368-69. The Court also held that a defendant could raise the issue in a post-conviction relief proceeding. *Id.* at 374. The *Padilla* Court did not address the possible retroactive application of its decision.

The issue of retroactivity was addressed, but as it turned out not finally settled, in *Denisyuk v. State*, 422 Md. 462 (2011). In that case, the Court of Appeals held that *Padilla* applied retroactively to post-conviction proceedings challenging guilty pleas that occurred after April 1, 1997—the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA").[7]

Summarizing a well-developed body of Maryland law exemplified by *State v. Daughtry*, 419 Md. 35, 78 (2011), the Court stated that "where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively[,] and it is only where a new rule . . . constitutes a clear break with the past . . . that the

---

[7]As noted by the Court in *Padilla*, the IIRAIRA effected sweeping changes in immigration law by significantly widening the class of deportable criminal offenses and by limiting, nearly to the vanishing point, the Attorney General's once wide discretion "to cancel removal for noncitizens convicted of particular classes of offenses." 559 U.S. at 364.

question of prospective only application arises." 422 Md. at 478 (citations and internal quotation marks omitted). The Court also pointed to our decision in *Warrick v. State*, 108 Md. App. 108, 113, *cert. granted but dismissed at request of party*, 342 Md. 507 (1996), as concisely summarizing the appropriate test: "'The general rule of retroactivity vel non can be stated simply—if the subject case merely applies settled precedents to new facts, the case is given retroactive effect, for the case is viewed as not changing the law in any material way.'" *Id.*

Applying the *Daughtry* test to the Supreme Court's reasoning in *Padilla,* and after surveying decisions from other jurisdictions, the Court of Appeals concluded that *Padilla* should be afforded retroactive effect because:

> *Strickland* set forth a general standard for application to a specific set of facts; that decisions applying the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] standard do not establish a rule of prospective application only; and that *Padilla* is an application of *Strickland* to a specific set of facts.

422 Md. at 481. In a footnote, the Court noted that the cases from other jurisdictions that it found persuasive relied upon the retroactivity analysis set out in *Teague v. Lane,* 489 U.S. 288 (1989).[8] The Court continued:

---

[8]In *Teague*, the Court stated:

> In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.

(continued...)

Maryland has not adopted *Teague*, nor must it. *See Danforth v. Minnesota*, 552 U.S. 264, 282 (2008) (stating that *Teague* "does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is declared 'nonretroactive' under *Teague*."). Thus, even if the Supreme Court ever were to hold that *Padilla* is not retroactive under *Teague*, that holding would have no adverse effect on our analysis here. Indeed, we cite and discuss these cases because we find persuasive, and subscribe to, the analysis these courts gave to the *Padilla* decision.

422 Md. at 480 n.8.

The scenario posited by the Court of Appeals came to pass in *Chaidez v. United States*, ___ U.S. ___, 133 S. Ct. 1103 (2013). In that case, the Supreme Court, applying the principles articulated in *Teague*, concluded that *Padilla* did not have retroactive effect in collateral proceedings. Writing for the majority, Justice Kagan noted that the Supreme Court itself had expressly declined to address whether inadequate advice as to the effect of a guilty plea upon a defendant's immigration status violated the Sixth Amendment's guarantee of effective assistance of counsel in *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). 133 S.Ct. at 1108. Justice Kagan surveyed decisions by federal and state appellate courts filed after *Hill* and before *Padilla*, and concluded that the general rule was that advice as to possible immigration law effects of a guilty plea was "collateral" to a guilty plea, and thus not within the pale of the Sixth Amendment's guarantee. *Id.* at 1109 n. 7, 8, and 9. She then stated:

> So when we decided *Padilla*, we answered a question about the Sixth Amendment's reach that we had left open, in a way that altered the law of most jurisdictions . . . . Many courts, we acknowledged, had excluded advice

---

[8](...continued)
489 U.S. at 301 (citations omitted) (emphasis omitted).

about collateral matters from the Sixth Amendment's ambit; and deportation, . . . could well be viewed as such a matter . . . . And however apt that distinction might be in other contexts, it should not exempt from Sixth Amendment scrutiny a lawyer's advice (or non-advice) about a plea's deportation risk. . . . . We thus resolved the threshold question before us by breaching the previously chink-free wall between direct and collateral consequences: Notwithstanding the then-dominant view, "*Strickland* applies to Padilla's claim."

If that does not count as "break[ing] new ground" or "impos[ing] a new obligation," we are hard pressed to know what would.

*Id.* at 1110 (citations omitted).

This brings us to *Miller v. State*, 435 Md. 174 (2013), in which the Court of Appeals sought to reconcile its holding in *Denisyuk* with *Chaidez*. *Miller*, like the case before us, involved a *coram nobis* petition seeking to vacate a guilty plea that had adverse immigration law consequences. *Id.* at 179-80.[9]

*Miller* presents a threshold problem. There is no majority opinion. Judges Battaglia, Harrell, and Adkins concluded that *Chaidez* limits *Denisyuk's* ambit to cases in which the

---

[9]*Miller's* complex procedural history illustrates the uncertainties surrounding *Padilla's* possible retroactive application. In *Miller v. State*, 196 Md. App. 658, 679-80 (2010) ("*Miller I*"), this Court held that *Padilla* did not apply retroactively. This case was decided prior to *Denisyuk.* The Court of Appeals vacated the decision and remanded it to us for reconsideration in light of *Denisyuk.* 423 Md. 474 (2011) ("*Miller II*"). On remand, we concluded that *Padilla's* retrospective application did not affect the outcome of Miller's case because Miller did not base his petition on ineffective assistance counsel, but rather on whether his plea was voluntary. 207 Md. App. 453, 460 (2012) ("*Miller III*"). Additionally, we commented that "[w]hatever the future may hold, Maryland in the past has regularly and invariably followed the Supreme Court's guidance on the issue of retroactivity/prospectivity and Maryland, for the present, continues to follow the Supreme Court guidelines. Those Supreme Court guidelines are to be found in *Teague* . . . ." *Id.* at 467.

9

"claims of involuntariness or ineffective assistance of counsel resulting from [the petitioner's] failure to be advised of the adverse immigration consequences of his plea had independent state bases in Maryland" at the time of the guilty plea proceeding. 435 Md. at 198. Writing separately but joining in the result, Judge McDonald stated that he found "Justice Kagan's analysis for the *Chaidez* majority persuasive and would apply it here." 435 Md. at 200. Chief Judge Barbera, joined by Judge Greene and former Chief Judge Bell, dissented. In their view, the Court's "reasoning in *Denisyuk* was sound and this Court is not required to depart from it, nor should it." 435 Md. at 205.

In *Derr v. State*, 434 Md. 88, 114 (2013), *cert denied sub nom*, *Derr v. Maryland*, ____ U.S. ____, 2014 WL 2560480 (2014), the Court of Appeals considered the precedential effect of *Williams v. Illinois*, ___U.S. ___, 132 S. Ct. 2221 (2012), another case without a majority opinion. The Court of Appeals stated that "'[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Id*. (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). We will apply the same standard to *Miller*.

*Padilla* held that the Sixth Amendment's guarantee of adequate legal counsel is violated when a lawyer fails to advise a noncitizen client of possible immigration law consequences before the client enters a guilty plea. *Chaidez*, *Denisyuk,* and the various opinions in *Miller* address the circumstances under which *Padilla's* holding is to be applied

10

in collateral challenges to convictions that became final before *Padilla* was filed. Judges Battaglia, Harrell, and Adkins stated that *Padilla* should be given retroactive effect only when state law provides an independent basis for a petitioner's claim. Implicit in Judge McDonald's concurring opinion is the suggestion that *Padilla* should not be given retroactive effect in collateral proceedings challenging criminal convictions. (This was the conclusion reached by Justice Kagan in *Chaidez,* whose reasoning Judge McDonald found to be persuasive.) In our view, the plurality opinion by Judge Battaglia represents the narrower holding. We turn to it now.

Judge Battaglia began the relevant portion of her analysis by noting that, in *Danforth v. Minnesota*, 552 U.S. 264 (2008), the Supreme Court "traced the history of its own retroactivity jurisprudence leading to *Teague* and concluded that its standards for retroactivity were intended 'to apply only to federal courts considering habeas corpus petitions challenging state-court criminal convictions[.]'" 435 Md. at 194 (quoting *Danforth*, 552 U.S. at 279). As a result, "*Teague* 'does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague*.'" 435 Md. at 193 (footnote omitted) (quoting *Danforth*, 552 U.S. at 282). Judge Battaglia then came to the nub of the issue:

> As we recognized in *Denisyuk*, we have never expressly adopted *Teague*, nor do we need to here. Certainly, were we to have adopted *Teague* as our standard, the resolution of this case would be facile and resolute. In the absence of the stewardship of *Teague*, though, retroactivity of *Padilla* really is **not** the issue, because, as a state court reviewing Miller's state criminal conviction, we could provide a state remedy for the violations that Miller

11

asserts were one to have existed at that time. In so doing, however, we cannot create a federal remedy denied by the Supreme Court, but must explore whether there is a basis in state law to provide Miller a remedy, beyond that which would be afforded in federal court.

435 Md. at 194 (citation omitted; emphasis in original).[10]

The plurality continued:

The issue before us in the instant case, thus, becomes whether Miller's claims of involuntariness or ineffective assistance of counsel resulting from his failure to be advised of the adverse immigration consequences of his plea had independent state bases in Maryland in 1999. When queried on this point at oral argument, Miller's counsel could not identify any such state bases for affording Miller relief, because there are none.

*Id.* at 198.

In her analysis, Judge Battaglia identified only two possible grounds in Maryland law

to support retroactive application of *Padilla*: Article 21 of the Declaration of Rights[11] and

---

[10]     In a footnote appended to this passage, Judge Battaglia explained:

Were we to independently assert that *Padilla* was retroactive contrary to the Supreme Court in *Chaidez*, federal constitutional law prior to 2010 would have two distinctly different applications in Maryland. Essentially, a non-citizen who had not been advised of adverse immigration consequences during a plea colloquy could seek redress in a state court for a violation of the United States Constitution, but could not do so in the United States District Court for the District of Maryland on an identical basis. That cannot be the answer when the United States Supreme Court is the final arbiter of federal law.

*Id.* at 194 n.9.

[11] Article 21 states in pertinent part: "That in all criminal prosecutions, every man hath a right . . . to be allowed counsel . . . ."

12

former Maryland Rule 4-242(e).[12] Neither was sufficient for the task.

Judge Battaglia pointed out that Maryland courts traditionally interpreted Article 21's

guarantee of effective assistance of counsel as *in pari materia* with the Sixth Amendment's.

*Id.* at 197–98 (citing, among other cases, *Perry v. State*, 357 Md. 37, 78 (1999); and *Wiggins*

*v. State*, 352 Md. 580, 602–03 (1999)). Judge Battaglia continued:

> After *Strickland* was decided, moreover, we flatly stated that, "[t]here is no
> distinction between the right to counsel guaranteed by the Sixth Amendment
> and Art. 21 of the Maryland Declaration of Rights . . . .," *State v. Tichnell*, 306
> Md. 428, 440 (1986), and had not wavered from that position prior to Miller's
> guilty plea. * * * We, clearly, then, prior to Miller's guilty plea and conviction
> in 1999, had not articulated that Article 21 provided an independent state basis
> for finding counsel deficient based upon a failure to provide advice regarding
> adverse immigration consequences prior to or during guilty plea proceedings.

435 Md. at 199 (some citations omitted).

As to Rule 4-242(e), "which mandated a trial court inform a defendant of the

possibility of adverse immigration consequences," Judge Battaglia noted that the Rule

---

[12]As previously discussed, Rule 4-242(e) has been transferred to 4-242(f). It reads
in pertinent part:

> (f) **Collateral consequences of a plea of guilty, conditional plea of**
> **guilty, or plea of nolo contendere.** Before the court accepts a plea of
> guilty, a conditional plea of guilty, or a plea of nolo contendere, the court,
> the State's Attorney, the attorney for the defendant, or any combination
> thereof shall advise the defendant (1) that by entering the plea, if the
> defendant is not a United States citizen, the defendant may face additional
> consequences of deportation, detention, or ineligibility for citizenship, . . .
> and (3) that the defendant should consult with defense counsel if the
> defendant is represented and needs additional information concerning the
> potential consequences of the plea. The omission of advice concerning the
> collateral consequences of a plea does not itself mandate that the plea be
> declared invalid.

further provided that "the failure to so advise a defendant did 'not itself mandate that the plea be declared invalid.'"*Id.* at 199. Therefore, concluded Judge Battaglia, "Miller's claims, in short, are not redressable." *Id.* at 200.

Miller's guilty plea was entered in 1999; Guardado's in 2008. But the applicable law is unaltered. Article 21 is still read *in pari materia* with the Sixth Amendment. *See, e.g., State v. Walker*, 417 Md. 589, 604 n.8 (2011). Moreover, Guardado did not seek relief under Article 21. His petition, arguably, can be read to suggest that the judge in the guilty plea proceeding failed to comply with what is now Rule 2-242(f). But, as the transcript of that hearing clearly indicates, the guilty plea court complied with the rule by advising Guardado that "This case may lead to other consequences such as deportation. If you have concerns in that area you should speak to your attorney before entering this guilty plea. Do you understand that?" Guardado responded "Yes." And, of course, a violation of the rule alone is not a basis to set aside the plea. *Miller*, 435 Md. at 199.

The circuit court did not err in denying Guardado's petition for a writ of error *coram nobis* because the linchpin of his contentions, namely, that *Padilla* applied retroactively to his case, was incorrect.

> **THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IS AFFIRMED. APPELLANT TO PAY COSTS.**