REPORTED

<u>IN THE COURT OF SPECIAL APPEALS</u>

<u>OF MARYLAND</u>

No. 1078

September Term, 2014

_____

JUAN CARLOS SANMARTIN PRADO

v.

STATE OF MARYLAND

_____

Wright,
 Arthur,
 *Zarnoch, Robert A.,
  (Retired, Specially Assigned),

JJ.

_____

Opinion by Wright, J.

_____

Filed: October 2, 2015

*Zarnoch, Robert A., J., participated in the conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

This appeal arises from a petition for writ of error *coram nobis* filed by appellant, Juan Carlos Sanmartin Prado ("Sanmartin Prado"), in the Circuit Court for Baltimore County on October 21, 2013. The petition asserted that Sanmartin Prado received ineffective assistance of counsel during his January 6, 2011 trial. Sanmartin Prado was charged with second-degree child abuse. On January 28, 2014, a *coram nobis* hearing was held, and on June 12, 2014, the circuit court denied the petition. Sanmartin Prado filed this timely appeal.

On appeal, Sanmartin Prado asks this Court to determine whether the circuit court erred in denying the *coram nobis* petition by finding that he waived his right to a *coram nobis* complaint, and whether he received ineffective assistance of counsel. For the reasons explained below, we reverse and remand the case to the circuit court.

**FACTS**

On January 6, 2011, Sanmartin Prado, an Ecuadorian citizen and a legal permanent resident of the United States, pled not guilty on an agreed statement of facts to a charge of second-degree child abuse. Sanmartin Prado was found guilty and sentenced to five years in prison, with all but two years suspended, and a two-year probation period upon his release. He did not appeal the verdict.

Sanmartin Prado has now been subjected to deportation as a result of his conviction for the second-degree child abuse conviction.[1] He alleges that he was not

---

[1] Sanmartin Prado's conviction constitutes an "aggravated felony" which is defined as "a crime of violence . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. §1101(a)(43)(F).

informed by his trial counsel of the immigration consequences of his conviction. Sanmartin Prado claims that he first learned he would be deported when officers from U.S. Immigration and Customs Enforcement ("I.C.E.") came to arrest him six months following the end of his probationary period.

During the circuit court proceeding for the second-degree child abuse charge,[2] Sanmartin Prado's trial attorney asked whether it was correct that the two "have had discussions with respect to [his] immigration status," to which Sanmartin Prado responded, "Yes, sir." During the *coram nobis* hearing, the trial attorney testified that the "discussions" took place on December 30, 2010, while Sanmartin Prado was in the "detention center." Sanmartin Prado's trial attorney further testified that he "explained to

---

Noncitizen United States residents convicted of an "aggravated felony" are deportable "at any time after admission." 8 U.S.C. § 1227(a)(2). Removal for these noncitizens is prioritized "unless they qualify for asylum or another form of relief under our laws, or . . . there are compelling and exceptional factors that clearly indicate the alien is not a threat to national security." Memorandum from Jeh Charles Johnson, Secretary of the Department of Homeland Security on Policies for the Apprehension, Detention and Removal of Undocumented Immigrants 3 (Nov. 20, 2014).

[2] Md. Code (2002, 2012 Repl. Vol.), Criminal Law Article § 3-601. Child abuse.

\* \* \*

(d) *Second-degree child abuse*.—(1) (i) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause abuse to the minor.

(ii) A household member or family member may not cause abuse to a minor:

(2) except as provided in subsection (c) of this section, a person who violates paragraph (1) of this subsection is guilty of the felony of child abuse in the second degree and on conviction is subject to imprisonment not exceeding 15 years.

[Sanmartin Prado] that there could and probably would be immigration consequences as a result of the plea . . . that it was a deportable or possibly deportable offense." Sanmartin Prado alleged in his petition that this advisement was insufficient as to the potential consequence of deportation resulting from his conviction and amounts to error reviewable upon petition of writ of error *coram nobis*.

In a written opinion, the circuit court found as a fact that trial counsel met with Sanmartin Prado "at the Baltimore County Detention Center before trial and explained the immigration consequences of a guilty verdict, including that the charge was a 'deportable offense' and Petitioner 'could be deported . . . if the government chose to initiate deportation proceedings,' and it was 'possible' that Petitioner 'would be deported.'" The court went on to state that "[t]he Petitioner testified that his counsel never told him he 'would be deported,' but acknowledged that he did have a conversation with trial counsel regarding his immigration status." The circuit court went on to rule that "[u]pon consideration of the evidence to this Court as well as the record of the plea hearing, the Court finds that the Petitioner has not rebutted the presumption that he 'intelligently and knowingly' failed to raise the allegation on appeal and Petitioner has made no showing that special circumstances exist for his failure to make the allegation of error on appeal." This timely appeal followed.

## DISCUSSION

The common law writ of error *coram nobis* was expanded in Maryland by *Skok v. State,* 361 Md. 52, 78 (2000), to serve as "a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant

3

collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds." A "presumption of regularity attaches to the criminal case," and therefore, the *coram nobis* petitioner bears the burden of proof. *Id.* at 78. This Court will not "disturb the factual findings of the post-conviction court unless they are clearly erroneous." *Arrington v. State*, 411 Md. 524, 551 (2009) (citation omitted). While reviewing for clear error, we will make an "independent determination of relevant law and its application to the facts." *Id.* (citing *State v. Adams,* 406 Md. 240, 255 (2008)).

**I. Waiver is no longer an appropriate basis for denying a *coram nobis* petition.**

Md. Code (2002, 2012 Repl. Vol.), § 8-401 of the Criminal Procedure Article ("CP") states: "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error *coram nobis*."[3] The circuit court did not cite nor rely on this statute in ruling that Sanmartin Prado waived his *coram nobis* claim.[4] A year after the circuit court's denial of Sanmartin Prado's petition, the Court of Appeals decided *State v. Smith*, __ Md. __, No. 47, September Term, 2014 (July 13, 2015). In *Smith*, the Court of Appeals applied CP § 8-401 to similar facts and held that

---

[3] This statute took effect October 1, 2012.

[4] The circuit court relied primarily on *Miller v. State*, 435 Md. 174 (2013), which addressed a permanent resident's writ of error *coram nobis* for a conviction based upon his guilty plea that he alleged was involuntary because he was not informed of the immigration consequences of his actions. The court refused to recognize the petitioner's *coram nobis* complaint, reasoning that he "could have raised the implications of his not been informed of the adverse immigration consequence of his plea by the trial court and his attorneys."

4

the petitioner did not waive her *coram nobis* claim by failing to appeal her conviction or file a petition for post-conviction relief. *Id.*, slip op. at 1. *Smith* explicitly contradicts the circuit court's waiver ruling in Sanmartin Prado's case.

The Court of Appeals in *Smith* reasoned that the petitioner was entitled to the benefit of CP § 8-401 because "the statute is both procedural and remedial and does not impair any 'vested right' of the State." *Id.* at 13. The Court further noted that petitioner Smith satisfies the standard for *coram nobis* and is entitled to pursue her claim because she:

> [S]tands convicted of a deportable offense; is not incarcerated; is not on parole or probation; and, "suddenly faced with a significant collateral consequence of [ ] her conviction, . . . can legitimately challenge the conviction on constitutional or fundamental grounds."

*Id.* at 35 (citation omitted).

The *Smith* Court states that upholding a *coram nobis* denial on waiver grounds would "undermine completely the procedural benefit the General Assembly bestowed upon the convicted defendants by its enactment of CP § 8-401." *Id.* Accordingly, we disagree with the circuit court on this procedural issue, reverse, and move on to the merits of Sanmartin Prado's appeal.

**II. The circuit court must determine whether Sanmartin Prado met his burden of proof as to his ineffective assistance of counsel claim.**

As noted, *supra*, Sanmartin Prado bears the burden of proof on his *coram nobis* complaint. *Skok, supra,* 361 Md. at 78. Sanmartin Prado alleges that he received ineffective assistance of counsel because his trial attorney never advised him of the risk of deportation in the event he was found guilty after proceeding with his trial on an

agreed statement of facts. The standard for reviewing ineffective assistance of counsel is set out in *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984), in the form of a two-pronged analysis: (1) counsel's representation must fall "below an objective standard of reasonableness," and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Sanmartin Prado's ineffective assistance of counsel claim is grounded in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Padilla, a native of Honduras, had been a lawful permanent resident of the United States for more than forty years and had served in the United States Armed Forces during the Vietnam War. Padilla faced deportation after pleading guilty to the transportation of a large amount of marijuana in his tractor-trailer in the Commonwealth of Kentucky. The Supreme Court held in *Padilla* that, under the Sixth Amendment, an attorney representing a noncitizen, in order to provide constitutionally effective representation, must inform the noncitizen client of the risk of deportation that follows a criminal conviction.[5] *Id.* at 371.

---

[5] *Padilla* involves a petitioner who pled guilty to a charge, as do many cases arising from Sixth Amendment ineffective assistance of counsel claims for subsequent deportation proceedings following criminal convictions. *E.g., Denisyuk v. State*, 422 Md. 462 (2011); *Guardado v. State*, 218 Md. App. 640 (2014).

Sanmartin Prado's case involves a not guilty plea to an agreed statement of facts. He relies on *Padilla* because he avers that he would have not proceeded with the trial on an agreed statement of facts had he known the consequences of the conviction. We agree that in this case Sanmartin Prado's plea, by way of an agreed statement of facts, was equivalent to a guilty plea. The proceedings were in no sense a trial and offered no reasonable chance that there would be an acquittal. *Sutton v. State*, 289 Md. 359, 367 (1981).

After examining the critical changes in immigration law over recent decades,[6] the

*Padilla* Court noted that "if a noncitizen has committed a removable offense after the

1996 effective decreed date of these amendments, his removal is practically inevitable."

*Padilla*, 559 U.S. at 363-64. Subsequently, professional norms of the legal profession

changed to include "the deportation consequence" of a criminal conviction.[7] *Id.* at 372.

Because the first prong of the *Strickland* analysis instructs that the "proper measure of

attorney performance remains simply reasonableness under prevailing professional

norms," *Strickland*, 466 U.S. at 688, then a noncitizen criminal defendant's Sixth

Amendment right to effective assistance of counsel requires advice on the risk of

deportation. *Id.* at 363-64; *see also, e.g.*, *Denisyuk v. State*, 422 Md. 462 (2011)

(applying *Padilla* in Maryland).

Courts have granted writs of error *coram nobis* and vacated a petitioner's

conviction based on ineffective assistance of counsel claims where the attorney

misadvised or failed to advise petitioner on the potential immigration consequences of his

guilty plea. In *United States v. Akinsade*, 686 F.3d 248, 256 (4th Cir. 2012), the Fourth

Circuit found that petitioner Akinsade "suffered a fundamental error necessitating *coram*

---

[6] *Padilla* recounted the following important recent changes in immigration law: First, Congress eliminated the judicial recommendation against deportation (JRAD), a form of judicial relief during sentencing for narcotics offenses. *Padilla*, 559 U.S. at 362 (referencing the Immigration Act of 1990). Second, in 1996, Congress removed "the Attorney General's authority to grant discretionary relief from deportation" to immigrants convicted of aggravated felonies. *Id.* at 363.

[7] The Supreme Court explained that "[f]or at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Padilla*, 559 U.S. at 373 (citation omitted).

*nobis* relief." Akinsade had asked his attorney on multiple occasions "about the potential immigration consequences of a guilty plea" and each time "his attorney misadvised him that he could not be deported based on [his] offense," giving him advice "contrary to the law at that time." *Id.* at 250. In *Denisyuk*, the Court of Appeals determined that counsel for petitioner Denisyuk, a 31-year old Latvian citizen who immigrated to the United States at the age of fourteen, performed deficiently by failing to advise Denisyuk of the deportation consequences of his guilty plea. 422 Md. at 485; *see also United States v. Kayode*, 777 F.3d 719, 723 (5th Cir. 2014) (explaining that defense counsel provided deficient assistance by failing to inform defendant of deportation risk associated with guilty plea); *United States v. Rodriguez-Vega*, __ F.3d __, No. 13-56415 (9th Cir. Aug. 14, 2015) (reasoning that "counsel's statements made after [petitioner] had already pled guilty, that she faced a "high likelihood" of removal, [do not] satisfy his duty to accurately advise his client of the removal consequences of a plea *before* she enters into it).

The *Padilla* Court emphasizes that it is now "quintessentially the duty of counsel to provide [a] client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" *Padilla*, 559 U.S. at 363-64 (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985)). Advising a client about immigration consequences requires informing him that a conviction renders him "deportable." This is sufficient to explain that a conviction results in action by I.C.E. that would place the individual into immigration proceedings. Statements that qualify "deportable," such as "possibly deportable" or "may be deportable," are inadequate

8

advice as to immigration consequences because they suggest the discretion of the federal government in *initiating* immigration proceedings against a convicted noncitizen, which a trial attorney is in no position to determine.  The *Padilla* Court highlights that, under current immigration law, "if a noncitizen has committed a removable offense . . . his removal is practically inevitable."  *Id.* at 363-64.  Thus, if the defendant committed a deportable crime, [8] he is, at the moment of conviction, automatically deportable.[9]  At the time a trial attorney is advising his client of the immigration consequences of his conviction, any subsequent discretion the federal government may exercise in pursuing immigration proceedings or any defenses the client may have against deportation are not pertinent.  The *likelihood* of deportation is relevant if and when deportation proceedings begin.[10]  Therefore, in order to unequivocally inform his client of the immigration

---

[8] 8 U.S.C. § 1227(a)(2) defines the classes of "Deportable Aliens" for particular criminal offenses.  *See also* note 1, *supra.*

[9] Deportation is "the compulsory removal of 'aliens' from the physical, juridical, and social space of the state[.]"  THE DEPORTATION REGIME: SOVEREIGNTY, SPACE, AND THE FREEDOM OF MOVEMENT 1 (Nicholas De Genova & Nathalie Peutz eds., 2010).  The word "deportation" is a term of art that is used exclusively throughout the Immigration and Naturalization Act, 8 U.S.C. §§ 1101-1537, to refer to the removal of a noncitizen residing within the United States.  Using the word "deportable," therefore, is critical in explaining immigration consequences to a noncitizen defendant.

[10] Congress has allocated the authority and discretion to initiate deportation proceedings against noncitizens convicted of aggravated felonies to the United States Attorney General.  It has dictated specifically that "the Attorney General shall provide for the initiation and, to the extent possible, the completion of removal proceedings, and any administrative appeals thereof, in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony."  8 U.S.C. § 1228(a)(3)(A).

9

consequences of his conviction, a trial attorney need only tell his client that he is "deportable" without qualification. This is especially important when a defendant accepts a plea bargain. As explained in *Padilla:*

> [I]nformed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties.

*Hernandez-Cruz v. Holder,* 651 F.3d 1094, 1111 (9th Cir. 2011), (citing *Padilla,* 559 U.S. at 373).

During the *coram nobis* hearing, Sanmartin Prado's trial attorney testified that he had explained to Sanmartin Prado while he was detained that there "could and probably would be immigration consequences" from the conviction, "but that . . . immigration is a moving target[.]" The trial attorney testified further that he explained to Sanmartin Prado that second-degree child abuse "was a *deportable* offense and he *could* be deported if the federal government *chooses* to deport him" or that if the "federal government chooses to . . . initiate deportation proceedings." (Emphasis added).

During the trial, the circuit court asked Sanmartin Prado's attorney to "advise Mr. Sanmartin Prado of the rights that he is waiving by proceeding" with an agreed statement

---

Once deportation proceedings have been initiated and the noncitizen has been "charged with any applicable ground . . . of deportability," 8 U.S.C. § 1228(a)(3)(A), the immigration judge "shall decide whether an alien is removable from the United States. The determination of the immigration judge shall be based only on the evidence produced at the hearing." 8 U.S.C. § 1228(c)(1)(A).

of facts. His trial attorney then asked Sanmartin Prado to confirm that the two had had "discussions with respect to [his] immigration status," to which Sanmartin Prado responded, "Yes, sir." The trial attorney further remarked that neither he nor the judge was "making any promises about what the federal government could possibly do in the future with respect to reviewing this conviction." Sanmartin Prado confirmed this statement as well.

What the circuit court stated in its written opinion bears repeating:

> Petitioner's trial counsel testified, and the Court finds as a fact that [trial counsel] met with Petitioner at the Baltimore County Detention Center before trial and explained the immigration consequences of a guilty verdict, including that the charge was a 'deportable offense' and Petitioner 'could be deported . . . if the government chose to initiate deportation proceedings,' and it was 'possible' that Petitioner 'would be deported.' The Petitioner testified that his counsel never told him he 'would be deported,' but acknowledged that he did have a conversation with trial counsel regarding his immigration status.

> Upon consideration of the evidence to this Court as well as the record of the plea hearing, the Court finds that the Petitioner has not rebutted the presumption that he 'intelligently and knowingly' failed to raise the allegation on appeal and Petitioner has made no showing that special circumstances exist for his failure to make the allegation of error on appeal.

Based on the circuit court's brief recitation of its findings on the merits, it is unclear whether the court came to a resolution of the disputed facts. The one paragraph contains the thrust of each side and paraphrases the testimony before the circuit court and at the original hearing. This may well have been because the court was not relying on a finding on the merits to resolve the case.

It appears that the circuit court denied the *coram nobis* petition, but declined to address the merits of his claims. Before this Court, Sanmartin Prado raises the same

11

issue that he raised in the circuit court; therefore, despite the circuit court's avoidance of that issue, it is properly before us. *Stevenson v. State*, 180 Md. App. 440, 447 (2008) (citing Md. Rule 8-131(a) (generally, an appellate court will not decide issues not "raised in or decided by the trial court")).

In light of the total evidence taken below, we can only conclude that trial counsel qualified his statements to Sanmartin Prado as to whether a conviction would render him deportable. The *Padilla* Court emphasizes that it is now "quintessentially the duty of counsel to provide [a] client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis." *Padilla*, 559 U.S. at 363-64 (quoting *Hill*, 474 U.S. at 62).

Here, Sanmartin Prado established that his trial counsel did not provide him with the correct "available advice" about the deportation risk. Taken as a whole, the advice was sometimes conflicting. In fact, at the end of the State's cross-examination, trial counsel agreed that he told Sanmartin Prado that deportation, as a result of this case, was "possible." Sanmartin Prado's trial attorney's conduct "[fell] below an objective standard of reasonableness," and did not meet the prevailing professional norms of most criminal attorneys. *Denisyuk*, 422 Md. at 481 (citing *Padilla*).

Because Sanmartin Prado has proven the first prong of the *Strickland* analysis, we remand the case to the circuit court to reach the second prong, as to whether there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS REVERSED AND THE CASE IS REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.  COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**